CHOUTEAU, Respondent, *vs*. NUCKOLLS, Appellant.

1. A judgment rendered in a court of one county, in a cause taken by a second change of venue *by consent of parties* from another county, though irregular, is not void, and a title acquired under it cannot be impeached in a collateral proceeding.
2. Under the act of congress approved July 4, 1840, the liens of judgments and decrees rendered in the United States circuit and district courts within each state, continue for the same period as the liens of judgments and decrees of the state courts.
3. The pendency of a writ of error in the supreme court of the United States does not affect the duration of the lien of a judgment of the circuit court.
4. Under execution upon a judgment of a state court, real estate was sold to A., being at the time subject to the lien of a judgment of the United States circuit court. After the lien of the latter judgment expired, execution upon it issued, under which the same real estate was sold to B. *Held*, A. had the better title.
5. Smallness of consideration in a sheriff's deed, of itself, under the circumstances of the case *held* not sufficient to affect a purchaser from the sheriff's vendee, with notice of fraud in the title of his vendor.
6. It being important to know whether a purchaser for value of real estate had notice of fraud vitiating the title of his vendor, the court trying the case without a jury must explicitly find upon this point.

*Appeal from Franklin Circuit Court.*

This was an action for the possession of several congressional subdivisions of land in Franklin county, both parties claiming title under Charles Gratiot, the patentee, the plaintiff under an execution sale upon a judgment of the United States Circuit Court for the district of Missouri, and the defendant under an execution sale upon a judgment of the Circuit Court of Warren county.

The judgment of the United States Circuit Court against Gra-

tiot was rendered April 29th, 1843, for the sum of $29,126 43, upon which execution issued dated Auguust 25th, 1847, under which the land in controversy was sold by the United States marshal on the 28th of September, 1847, and bid off by the United States of America for the sum of $1400, who, on the same day, received a deed from the marshal. On the 2d of July, 1851, the land was by the United States conveyed to the plaintiff for a consideration named in the deed, of $1862 05. The execution, which is made a part of the marshal's deed, recites that it was issued pursuant to an order of the Circuit Court made on the 6th of October, 1846, in conformity with a special mandate of the Supreme Court of the United States.

The judgment of the Warren Circuit Court was rendered April 22, 1844, for costs in an ejectment suit begun by Gratiot in Franklin county, taken by change of venue to Gasconade county, and thence by consent of parties to Warren county, where the plaintiff was nonsuited by reason of his failure to appear. Execution for the costs was issued against Gratiot, dated September 10th, 1844, and directed to the sheriff of Franklin county, under which the land in controversy, with other land, was sold April 21st, 1845, and James C. Robertson became the purchaser of the whole at the price of $3 25. He received from the sheriff a deed dated April 23d, 1845, in which the price bid was named as the consideration. On the 12th of May, 1852, Robertson's administrator, after a sale according to law, conveyed the land sued for, with more, to John Q. Dickinson, for a consideration named in the deed of $86 95, who, on the 20th of November following, conveyed an undivided half to the defendant, Nuckolls, for a consideration named in the deed of $82 20.

The plaintiff produced a witness who stated that, at the time of the sheriff's sale to Robertson, he was living upon the Gratiot claim and wished to buy one forty acre tract; that he inquired of the sheriff and Robertson as to the day upon which the sale would take place; that he went to town on the day named by them, but found that the sale had taken place the day

before. Another witness stated that, as he was trying, three or four days before the sale, with the assistance of his brother, to read an advertisement of the sale posted up at Walker's mill, Robertson came up and tore it down, saying it was of no further use, and putting up some other paper in its place, the purport of which witness did not know, as he could not read. The same witness attended the sale, with a view to buy a tract adjoining the one upon which he lived. He asked the sheriff to notify him when the tract he wanted was put up. The sheriff replied that he was selling it in larger parcels than witness wanted, and besides, that he would be buying a law suit, as there was a judgment of the United States Court which was a lien upon the land. Witness recollected this fact when his attention was called to it, and did not bid on the land.

There was evidence, (which was excepted to by the defendant,) that the plaintiff attended the sale by Robertson's administrator, and gave public notice that the title was in him; but the witness did not know whether Dickinson was then in hearing or not.

Upon these facts, the Circuit Court, trying the case without a jury, declared to law to be that the sheriff's deed to Robertson was fraudulent and void, and that it exhibited upon its face evidence of fraud which imparted notice to the defendant, and that the plaintiff's was the better title. The defendant appealed.

*M. Frissell*, for appellant. 1. If plaintiff relied upon the fact that the deed from the sheriff to Robertson was fraudulent, he should have instituted a suit to set aside that deed. 2. Smallness of consideration in a deed has never of itself been considered sufficient evidence of fraud in any case. (*Livingston* v. *Bryan*, 11 Johns. 565. *Den* v. *Zellers*, 2 Halstead, 153. *Cooper* v. *Gilbraith*, 3 Washington, 557.) But in this case, even if it had been sufficient to put the purchaser upon inquiry, he would have found an explanation, when he discovered that the land was sold subject to the lien of a judgment for some $30,000. (*Fletcher* v. *Peck*, 6 Cranch, 133. *Dex-*

Chouteau v. Nuckolls.

*ter* v. *Harris*, 2 Mason, 538.) The notice given by Chouteau at the administration sale amounted to nothing more than would the putting of his deed upon record. He merely claimed that his was the better title, but said nothing about any *fraud* behind the apparent title of Robertson. 3. The lien of judgments and decrees of United States Circuit and District Courts within any state ceases at the same time as the lien of judgments of the state courts. (5 U. S. S. at Large, p. 393, sec. 4.)

*Jones* and *Stevenson*, for respondent. 1. The judgment of the Warren Circuit Court, under which defendant claims title, was void, that court having no jurisdiction of the cause. 2. If this were otherwise, still the plaintiff has the better title under the judgment of the United States Circuit Court, that being the elder lien. 3. The sheriff's sale at which Robertson purchased was void, because the land was sold in a body and not divided into parcels, as required by law. 4. The sale to Robertson was vitiated by fraud, and the smallness of the consideration named in the sheriff's deed was sufficient notice of it to all purchasers. 5. As to the lien of judgments of the United States Courts, see *United States* v. *Duncan*, 12 Illinois, 523. *Clements* v. *Berry*, 11 Howard, (U. S.) 398. *Meyer* v. *Campbell*. 12 Mo. Rep. 603.

SCOTT, Judge, delivered the opinion of the court.

1. There were no such irregularities in the suit which resulted in a judgment for costs against Gratiot in favor of Robertson, as would render it a nullity. The judgment was rendered by a court of general jurisdiction, to which the cause, it appears, had been transferred, with the consent of both parties. It was regularly in the Gasconade Circuit Court by a change of venue from Franklin county. From Gasconade, it was transferred to Warren county by consent of parties, where the final judgment was rendered. This was, no doubt, erroneous; but it is not for error alone that a judgment of a court of general jurisdiction can be treated as a nullity in a collateral proceeding.

29—VOL. XX.

For error, a judgment must be reversed on appeal or writ of error, and if a party forgoes this method of correcting the errors of a judgment, he cannot afterwards set them up in avoidance of it, in a collateral action. If the party, by his conduct, had barred himself of his writ of error, the irregularity might have been corrected by the Circuit Court of Warren county, on motion.

2. The United States, on the 29th April, 1843, recovered judgment against Charles Gratiot, for the sum of $29,126 93, under which the land in controversy was sold on the 28th September, 1847. The fourth section of the act entitled an act in addition to the " acts respecting the judicial system of the United States," approved July 4th, 1840, declares that judgments and decrees hereafter rendered in the circuit and district courts of the United States within any state, shall cease to be liens on real estate or chattels real, in the same manner and at like periods as judgments and decrees of the courts of such state now cease by law to be liens thereon. The lien of this judgment expired then, in April, 1846, as by our law three years is the duration of the lien of a judgment.

3. The pendency of a writ of error in the Supreme Court of the United States, on the judgment against Gratiot, did not affect the duration of the lien. The affirmance of that judgment would not prolong its existence, nor would the pendency of the writ continue the lien until the time of affirmance. This we consider plain from the words of the act creating the lien.

4. Execution was issued on the judgment obtained in the Warren Circuit Court against Gratiot, and on the 24th September, 1844, was placed in the hands of the sheriff of Franklin county, and was levied on the following day, and the land in controversy sold by virtue of said levy on the 21st April, 1845. From this statement of facts, it follows that the land was sold with the lien of the judgment of the United States upon it; but as the United States permitted the lien of their judgment to expire before the land was sold under their execution, the pur-

chaser under the execution from the state court obtained the elder legal title.

5. The remaining question in the cause is, as to the fraud in conducting the sheriff's sale. No doubt the evidence of fraud was sufficient to avoid the sale, as to Robertson, the purchaser; but the land since has gone into the possession of those who claim that they are purchasers in good faith for value, without notice, and cannot be disturbed in the enjoyment of rights thus obtained. We do not consider that the deed, on its face, bears any evidence of fraud. The smallness of the consideration is not of itself evidence of fraud. It is a circumstance that may be weighed along with others, in determining the question of fraud, but of itself it does not show fraud. The fact that the land was subject to the lien of the United States judgment may have had its influence on the sale.

6. We consider the finding of the court insufficient on the subject of fraud. The finding should have stated explicitly whether the defendant was affected with notice of the fraud of those through whom he claimed the land in controversy.

We see no objection to the admission in evidence of the declaration made by Chouteau at the administrator's sale. It is not sufficient however that such declaration should have been made; it should also appear that notice of it came to the defendant.

With the concurrence of the other judges, the judgment will be reversed, and the cause remanded.